### In the Matter of Eugene H. and Dorothy E. KRUMM, Debtors.

### Bankruptcy No. BK88–64.

United States Bankruptcy Court,
D. Nebraska.

April 14, 1988.

Arlan G. Wine of Wauneta, Neb., for debtors.

Steven C. Turner of Omaha, Neb., for Adams Bank and Trust, Imperial, Neb.

### MEMORANDUM OPINION

JOHN C. MINAHAN, Jr.,
Bankruptcy Judge.

THIS MATTER comes before the Court on Debtor's Motion for Use of Cash Collateral (Fil. # 7, February 3, 1988) and the Resistance to it by the Adams Bank and Trust–Imperial ("Bank") (Fil. # 21, February 22, 1988). An expedited hearing on this motion was heard March 15, 1988, the sole issue being whether a replacement lien on future crops is the indubitable equivalent of cash collateral. For the reasons set forth below, the Motion to Use Cash Collateral is denied.

### FACTS

Debtor requested to use up to $150,-000.00 of Bank's cash collateral. At the time the Debtor filed his petition in bankruptcy in January, 1988, the Bank had a claim of $280,848.65, plus interest, secured by farm products, equipment, livestock, and all crops growing or to be grown on certain leased property. The Bank is substantially undersecured. Debtor proposes to use the cash for living expenses, land rent and to pay for the expenses of planting and harvesting a 1988 corn crop. Debtor does not own any of the land he farms.

Debtor proposes to grant a replacement lien on the 1988 corn and bean crops to the Bank as adequate protection. Debtor will purchase hail and multi-peril crop insurance policies in the face amounts of $79,000.00 and $115,000.00, respectively at a total premium cost of $12,000.00 to $16,000.00. The premium will not be paid in advance, but would be due at a later date. If the entire crop is destroyed by hail or fire, the insurance policies will pay the insured the full face values, less the premiums. If the crops are lost as a result of other weather conditions or insects, only the multi-peril policy will pay and then only $100,000.00, less the premium. No insurance coverage is available for losses due to neglect, mismanagement or incapacity of the Debtor.

The Debtor is an extremely capable farmer who consistently obtains yields higher than the average for the area. Records for the previous years support Debtor's projected cash flow figures.

Debtor's projected production figures are an accurate reflection of potential income, but the Debtor has consistently underestimated his expenses in the past. Storage charges have generally been higher than anticipated.

## DISCUSSION

Bankruptcy Code in Section 363 defines the term "cash collateral" and sets forth the standards which must be met in using, selling, leasing or otherwise affecting this type of collateral. Section 363(e) requires that "the court ... shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest." Thus, the Bank's objection to the Motion for Use of Cash Collateral asserts that the Bank's interest in the cash collateral will not be adequately protected by the proposed replacement lien and crop insurance.

In Section 361(3), one of the means of providing adequate protection is "granting such other relief ... as will result in the realization by [the creditor] of the indubitable equivalent of [its] interest in such property." In the case of *In re Martin*, 761 F.2d 472 (8th Cir.1985) the Court of Ap-

peals for this Circuit discussed the requirements of adequate protection and indubitable equivalence in cash collateral situations, setting forth three criteria to be considered by the trial court: 1) the value of the secured creditor's interest; 2) the risks to the secured party's value resulting from the Debtor's request for use of cash collateral; and 3) a determination whether Debtor's adequate protection proposal protects value as nearly as possible against risks to that value consistent with the concept of indubitable equivalence. *Martin* at 477.

■ In the context of depriving a secured creditor of its security interest in cash collateral, "indubitable equivalence" analysis imports a necessary comparison of the relative risks of loss to the secured creditor if it has recourse on the replacement collateral instead of the cash collateral. If the proposed adequate protection in the form of a replacement lien and other protections do not constitute the indubitable equivalence to cash collateral, the substitution cannot be approved because to do so would deprive the secured creditor of a protected property interest.

■ Because the risks associated with future crops are far greater to the secured creditor than are the risks associated with cash collateral, I conclude that indubitable equivalent standard has not been met.

If the Debtor defaults or becomes unable to perform after having purchased seed, fertilizer, fuel, and paid his rent, but before the crop is planted, the Bank, as of that point in time, certainly would not be secured by the indubitable equivalence of cash collateral. In all events, repayment of the cash collateral is contingent upon there being a crop to harvest. The Court recognizes that if any farmer can raise a crop profitably, Mr. Krumm is the farmer to do it. He is experienced and hardworking. He consistently produces a higher yield of corn than the average producer in the area. Thus, the likelihood of any crop failure due to his mismanagement or negligence can be discounted. However, there are many risks beyond his control in the form of drought, flood, early freeze, insects or acci-

dental injury or death. These risks are not fully covered by the proposed insurance. The premium is deductible from the amount payable to the insured and only if the crops are completely destroyed by hail or fire, would there be sufficient insurance proceeds to repay all of the $150,000.00 sought to be used. If the crop is entirely lost due to other reasons, the insurance proceeds would not be sufficient to repay all of the $150,000.00 cash collateral used.

The value of the crop to be grown depends, of course, on market prices at the time sold. Debtor may attempt to limit this price risk by hedging in the future market but participation in futures market exposes the Debtor to other risks which were not addressed at the trial.

Despite Debtor's best efforts to protect the Bank's interest, the risk involved in replacing cash in hand, with a lien on future property, presently non-existent, are far greater than the risks associated with cash collateral. A lien on crops to be planted is not the indubitable equivalent of cash collateral.

This finding does not preclude Debtor from making a request to use cash collateral in a different amount. This Court is mindful of the policy in this Circuit to support a farmer's reorganization efforts to the greatest extent possible while still protecting the creditor's best interest. "If the Debtor's proposal can be modified to provide adequate protection while still remaining useful to the Debtor, Debtor's request should be granted under the modified plan." *Martin* at 478. Thus, Debtor may not be totally foreclosed from seeking to obtain the working funds necessary to plant his 1988 crops.

The Court notes that as a condition to granting a replacement lien the Debtor must comply with Code Section 364 and applicable bankruptcy rules on notice and hearing.